May it please the Court, Brad Bogan for Martin Renteria. The issue in this case is whether Congress clearly intended for a statute meant to combat sex trafficking, and which was passed to implement an international convention on sex trafficking, was meant to apply to purely local instances of sexual assault of a child in circumstances where neither the child nor anyone else was trafficked, and which circumstances which don't resemble trafficking in any way, or the other types of cases that this statute is typically applied to, which is commercial prostitution. And when was this argument first raised in front of the district court and how? So it was first raised in a motion to dismiss. There were four counts in the indictment, and there were various arguments on different counts, but relevant here, Renteria moved to dismiss count four, which was the sex trafficking of a child count, arguing that the statute is targeting, it requires a commercial sex act, which requires a quid pro quo, something of value given on account of a sex act, and that that statute, so the motion said, the government never alleged that Renteria trafficked the minor in any sense of the term. They alleged a sexual assault. I guess I'm asking, as I saw, there was some friction with the defendant, and he really wanted to press, even to us, commercial sex act, which seems consistent with the motion to dismiss. When, let me ask him more precisely, when did Bond first get cited as authority that a crime hadn't been stated in this count four? So Bond first cited in the appeal, in the opening brief. So are you accepting the Bond argument is one of plain error to us or not? No, I'm not accepting that. This argument is preserved. It's not necessary that the argument presented on appeal be identical to the argument that was presented in the district court. It's enough that — But you weren't challenging the commercial sex act element. Well, we were arguing that the statute does not reach this type of conduct, this type of purely local conduct that has nothing to do with anything resembling prostitution. But then I looked at the charge conference, and it doesn't seem that comes up. If you remember in the charge, it seemed to me everyone who was accepting interstate element was sufficient. The argument from your client at the charge conference was the phone couldn't qualify. Well, I — It wasn't that you've judged — you've now heard a case that shouldn't even be submitted to the jury. Well, we did make a Rule 29 motion at the close of the — or excuse me, when the government arrested its case. And at that time, we made the same argument that we made in the motion to dismiss, which was that technically this is a pimping statute. So I think that we're very far afield from the purpose of the statute. So, yes, we were talking about commercial sex act. We were talking about the sufficiency of the evidence. But I want to be clear. I'm not making a sufficiency of the evidence argument here. Right. You're making a legal argument. It just doesn't state a — Right. Which is just as in Bond. So in Bond, the conduct fit within the plain, literal text of the statute. But that wasn't enough for the statute to actually apply to that conduct in the view of the Supreme Court there. I'll let you continue. I guess the natural next question is, has Bond ever been applied to any federal crime that has an interstate commerce clause? Or, of course, more specifically, has it ever been applied to invalidate a 1591 conviction? OK. To my knowledge, it's never been applied to invalidate 1591. There have been Bond challenges to 1591. But all of them that I saw involved actual commercial prostitution. They weren't circumstances like this, which didn't have any element of prostitution to it. OK. So, yes. So the issue is whether 1591 reaches this conduct. And so there's two commercial elements, if you will, to 1591, one of which is that it has to be — conduct has to be inter-affecting interstate or foreign commerce and that there has to be a commercial sex act. So Bond tells us that when a statute, a federal statute, intrudes upon an area of traditionally local concern, that Congress has to clearly indicate that it meant for the statute to apply to that purely local conduct. And purely local conduct is what we have here. So the — what happened was that the child wanted some things, a BMX bike, a hoverboard. So his father told him, well, if you want money for those, you're going to have to earn it. So the child went around the neighborhood knocking on — knocking on houses, offering to do chores in exchange for money. And so one of those houses was rent-a-ria's, and so that's how rent-a-ria and the child got involved. And so the child was doing some perfunctory chores at the house, like washing rent-a-ria's car and mowing the lawn, but was also just spending time with rent-a-ria, hanging out with him. This happened over the course of about a month, month and a half. And during that time, rent-a-ria assaulted — sexually assaulted the child four times. But he also plied the child with the things that he wanted, bought him a BMX bike — But unlike the earlier child molestation conviction that did go state-only, correct? His earlier conviction was a state-only case. There were two, yes. There were two. One, he gets — I thought he was acquitted, and maybe not. Anyway, those do look purely interstate. But when you say this is purely local, I think the government's going to say the jury heard that the lubricant that was used was bought, and the enticing financial element, the bike, was purchased interstate through the channel of communication, the phone. And that's no different from Bond. The conduct in Bond fit the elements of the statute. And there were interstate commerce connections in Bond. So some of the chemicals that Bond used in that case, she had purchased from Amazon, if I remember correctly. She spread some of the chemicals on the victim's mailbox. So that's another arguable federal nexus for the statute. But still, given the nature of that statute, which was meant to implement an international convention on chemical weapons, and the requirement in the statute that there be a chemical weapon used, the Supreme Court said — and not for the first time in analyzing statutes of this when there is that type of local conduct that is encompassed within the literal language of a broad statute, that at least raises some kind of ambiguity as to whether Congress clearly intended for the statute to reach that local conduct. Bond said no. And Bond wasn't a decision out of the blue. It relied in part on the Supreme Court's earlier decision in Jones. Well, I'll come back, because you did answer my question about Bond as to 1591. But has any circuit applied Bond to invalidate a federal crime that does have an interstate commerce element? Not to my knowledge. So that would be a big step by us. And that is what you're asking for. I don't believe it would be a big step because of the Supreme Court's decision in Jones, which involved the federal arson statute, which also had an interstate commerce element. And you cited Jones? In the reply brief, yes, in the discussion of Bond. Right. But Jones is a better case, I agree, for you than Bond, I think. But you'd probably say the two together. I'd say the two together, because again, as I was saying, Bond wasn't anything new. It didn't break any new ground. It relied on other cases in which the court had said, when there is this federal intrusion on a matter of traditionally local concern, and sexual assault of a child clearly a matter of traditionally local concern, there has to be a clear indication on the part of Congress to reach that conduct, even if the conduct at issue would fit the literal terms of the statute. And again, here, the evidence was presented to the jury. They found that the evidence was sufficient on the commercial elements of the statute. So I'm not raising a sufficiency challenge. It's purely a challenge to whether Congress clearly indicated for 1591 to reach local instances of sexual assault. And I didn't see in the government's brief any cases where a court has applied or sustained a conviction under 1591 under facts like this. They're all prostitution cases, either adult women who are coerced or forced into prostitution, whether they cross state lines or whether it happens purely locally through using hotels, or it's children who are coerced or enticed. Why isn't what he did here prostitution? I mean, he pays something of value to get sex. Why isn't that prostitution? Partly because there was no pimp involved here, which, again— But he's pimping for himself. I don't think that's what the statute is targeted at. And that doesn't resemble the facts of the other cases that are cited in the government's brief or other cases that I've seen. Sometimes there are instances where the pimp is initially the person who's sexually abusing the child and then starts prostituting the child, maybe by advertising on the Internet or something like that, or arranging liaisons with Johns using telephones, and where the encounters happen in hotels, things like that. The closest that I found was—I don't remember the name of the case, but where a mother was basically prostituting her child and the John was either paying the mother or providing the mother drugs as compensation for that. But that's not what was happening here. If this is enough to constitute sex trafficking under 1591, then there's a large universe, perhaps, I don't know, a majority of just local sexual assault cases that are all of the federal cases. And yet, there doesn't seem to be any cases like that so far that courts have decided, and the statute was passed 23 years ago. So that gets to the federal-state balance question. Yes, it does. Where you have the obligation to show that this would significantly upset the federal-state balance. Yes. And in the view of the Supreme Court, as articulated in Jones and in Bond, it's the fact—it's not that the federal government is pushing the state aside, necessarily. It's that the federal government is potentially intruding upon an area that is traditionally the province of the states, and that in itself implicates the federal-state balance and is an infringement on the federal-state balance. And so that's why, in Bond, the Supreme Court said, we're going to interpret this statute not to reach the conduct there. It's why, in Jones, the Supreme Court interpreted the federal arson statute not to reach just an owner-occupied residence that wasn't actually being employed for a commercial purpose. Again, even though there were arguable commercial connections in Jones, the house was hooked up to gas service. The owner of the house had a mortgage on it. So there were commercial— You cited Jones several times in the answers to my two colleagues. The statute there, federal property, any property used in interstate foreign commerce, any activity affecting interstate foreign commerce, it was a private residence with, you know, internet connections, whatever else you talked about, other ways that interstate commerce might have been involved. That to me was quintessentially a local crime—a local event, local crime that is distinguishable from what we're talking about here. It seems to me that the real question in our case is whether Congress intended to reach this or not. And I just don't see Jones as a particularly helpful case to you, just because it was so far afield from a property engaged in interstate commerce, a private home. And here we have all the elements, as you say, of the 1591 crime that you just think is too attenuated. It is too attenuated, again, because look at the statute, look at the caption of the There are congressional findings about why the statute was adopted in the first place, and it was to implement this international convention on sex trafficking, which the convention and Congress envisioned as something akin to slavery or involuntary servitude. The statute has been expanded since then to include not just international sex trafficking, but also interstate sex trafficking, and sex trafficking that happens within a state. But it's still targeting circumstances that are actually or akin to commercial prostitution. There's no clear indication that Congress meant for this to apply to an ordinary sexual assault that happens in a purely local area without any connections to commerce other than those that virtually anybody else who's living in modern society would have, which is using payment processes through a credit union. So it's true bond is not 100% on point, Jones is not 100% on point, but the core principle in those cases applies there, that where the statute infringes upon a matter of traditionally local concern, there must be a clear indication that Congress meant to reach it. If that's the test, is it relevant, and I'm remembering this from the pretrial hearings, that this was a joint task force, the state brought this case to the federal government? I don't believe this was a task force case. This is out of the Midland Division of the Western District of Texas. A lot of those cases that I've seen, there's no task force, it's just the feds picking up state cases. And so Renteria was first charged in state court, and to my knowledge remains charged in state court, I think he's still in the Midland County Jail awaiting the disposition of those charges. But the U.S. came in, charged him in federal court with two counts initially, it was just the production of child pornography and then committing a sex offense against a child while being a registered sex offender, and then after Renteria lost his motion to suppress, the government went back to the grand jury and piled on additional charges, which the government had threatened to do if he pressed on with his motion to suppress, and that's when the 1591 charge and also the possession of child pornography charges were added. Okay. All right. You saved time for a bottle, Mr. Duncan. Thank you. Ms. Harnwell-Davis? Good morning, Your Honors. May it please the Court, Natasha Harnwell-Davis on behalf of the United States. Courts have consistently found that bond does not apply to statutes with a commerce clause element. Section 1591 contains that commerce clause element, and the inquiry should stop there. But it, Jones is a problem for that statement. Not necessarily, Your Honors. Because Jones had an interstate commerce element, and still the court didn't allow it. The Supreme Court in Jones was interpreting the phrase in the use of commerce, so it wasn't necessarily interpreting the kind of existence of the in or affecting commerce, which is what we have here. It was narrowing the interpretation of the phrase the use of. I do briefly want to touch on the standard of review, which is that the, should be for plain error, because the objections below were not adequate to alert the court that Renteria was raising a statutory challenge. I also, on the topic of Jones, would like to point the court to Bass, which is to say that in Bass, the Supreme Court narrowed the interpretation of that gun statute such that where the federal government shows on a case-by-case basis a nexus to the commerce clause, the court said there is no federalism concern there. Bond does not apply to Section 1591 because 1591 . . . I'm sorry. You made, I think, three points, maybe just two, because the third sounds like the first. But on the standard of review, you're saying the motion to dismiss doesn't contemplate a, it was a motion to dismiss, so it was saying this isn't legally sufficient. It was saying, and I have the motion . . . Go ahead and just describe. How is it not comprehending a statutory attack? Because it's a page-and-a-half long motion that focuses on whether or not there was a quid pro quo for the sexual conduct. You can also see, I believe, it's the record site 1312, where the defense, the trial counsel characterizes the motion to dismiss as nobody testified to a quid pro quo. I think this was the subject of our motion to dismiss. The court, the trial court denied the motion to dismiss on kind of this essentially factual ground and said it was a question for the jury to determine whether or not there was a quid pro quo. Renteria never renewed his objection or clarified to say, you know, that's not the grounds of my objection. What I'm really talking about here is a statutory challenge that the Fed shouldn't even be here. He never . . . I suppose, I guess, if it isn't a crime, as a matter of law, that sounds like it would probably rise to plain error. I'm not sure the analysis would end up that different. I agree that under either de novo review or plain error review, the government wins, but I think the easier path through this case is through plain error. We would certainly prefer the court to say that there is no error, but I think the easiest way for this court to address this case is to say that any error was not plain, given that no court has ever rejected a . . . has ever accepted a bond challenge to 1591, and indeed two other circuits have said that bond just simply does not apply. What 1591 case do you have that has these facts where, I guess, the closest interstate commerce element is the fact that he bought the bike on the Internet? I would point the court to two cases in particular as similar. The first is Wills, which this court decided, I believe, last year, and the Supreme Court recently denied cert on. The second case is Adams and the Eighth Circuit, so I cite two Adams cases. One is a district court case that gives a very excellent overview of the legislative history, but I would point the court to the Eighth Circuit case. In those cases, the defendants were giving things like drugs, like gifts. In those cases, it was to the mother, but the statute doesn't make a distinction between whether or not the gifts are given to the child or to a mother, because the definition of commercial sex acts says anything of value given . . . Do you have any case just factually that's neighbor preying on child that's charged as a 1591? Because it is sort of . . . this man seems to be a recidivist, and he did, I think . . . I don't know if it's a recidivist where he assaults the child in the bedroom or on the couch. That goes state. Would your position, if we accept your interpretation, could the federal government have prosecuted that one too? The federal government could not have prosecuted, I believe, it's minor victim three in particular. Excuse me, minor victim . . . yes, minor victim three, and that case is where he went into the bedroom, so he spent the night after a neighborhood barbecue, went into the bedroom and touched the child's genitals. There, there was no indication that anything of value was given for the sex act, and so the federal government could not have brought a case under 1591. I would also say . . . That's the limiting principle. It's really . . . you're resting more on the commercial sex act than you are on the bike purchase to entice. I think the stronger . . . so I would say that there are several limiting principles here. The strongest limiting principle is the existence of the commercial aspect. So there has to be a thing of value given in exchange for the sex act. In this case, I think this case actually illustrates kind of the limitation, because you do have minor victim two and minor victim three, where the government could not have brought charges under 1591. Okay. You do also have the commerce clause as a limiting principle. It is incredibly broad. We are kind of getting to the limits, but it is nevertheless a limiting principle. You also have the fact that it has to be a child, or if it's an adult, it has to be using force, fraud, or coercion. So there are limiting principles to the statute. The federal government cannot bring a charge under 1591 for every instance of child sex abuse. So bond simply just does not apply, where there is the commerce clause element written into the statute. Two courts have already rejected, two circuits have already rejected such challenges. That's Walls in the Ninth Circuit and McMillan in the Seventh Circuit. This court has already in Fay, which is spelled F-H-E-A, rejected a very similar challenge. I think it's worth citing part of the decision in Fay, where it sounds very similar to the challenge that Renteria is making. So, quote, Fay contends that Congress could not validly regulate purely local activity under the commerce clause, arguing that the conduct at issue in his case, quote, falls outside the ambit of the Supreme Court's decision in Gonzalez v. Raich. This issue is not raised in the district court, but in any event, it fails on the merits, because there is evidence of an interstate nexus in this case. And you cited that in your brief, right? I did, yes, Your Honor. I just want to note it's spelled F-H-E-A, so it's not phonetic. Speak to Mr. Bogan's point that it matters that this is not a prostitution. You can address whether it is prostitution, but whether that matters. I think it does not matter here. I think it is fair to characterize it as Mr. Renteria essentially acting as the pimp himself. I think Renteria's argument essentially boils down to a perceived mismatch between the title of the statute and the commercial, the definition of commercial sex act. But of course, the title of the statute, which uses the phrase sex trafficking, is not a basis to narrow the statutory definition. I also briefly want to address the argument that Bond had a commercial aspect to it. The statute in Bond did not have a Commerce Clause element. In Bond, the United States disavowed a Commerce Clause argument, and so the court never considered that statute under the Commerce Clause. The fact that Bond purchased chemicals from Amazon is a fact of the case, but it doesn't help inform the legal analysis because there was no Commerce Clause element in that statute. So the fact that Bond used Amazon doesn't give the answer to this case because the statute 1591 does contain a Commerce Clause element. Okay. But that does sort of, he brought up in the reply brief, you haven't yet had a chance to talk about Jones. That argument would be hard to harmonize with Jones. I think the, I don't believe so, Your Honor. So Jones was very much about the court interpreting the phrase, in the use of, and as opposed to the existence of the phrase in or affecting interstate commerce. Okay. So the house that the arsonist burns down is not in the use of interstate commerce. Exactly. Here, the sexual assault of the child affects interstate commerce because what? It's that the conduct has a Commerce Clause nexus, and so the jury heard evidence that Renteria used a lubricant that was manufactured out of state, that he purchased goods from You also have the use of the cell phone that was manufactured in Vietnam. So that cell phone was used to coordinate the abuse, to record the abuse, and also to time the abuse. You also have the existence of him using his Visa debit card to purchase a number of the items. If this court does believe that it needs to do a bond analysis and look for a clear indication, Congress did give such an indication. So I'm going to sound a bit repetitive, but here you do have the existence of the phrase affecting commerce to show that Congress intended to reach to the full breadth of its Commerce Clause authority. You have the legislative findings where Congress said that child sex abuse is a domestic concern, and Congress, I think it's worth noting, didn't put in any threshold. So it didn't have to be a certain number of children. It didn't have to be a certain value of good. Congress indicated that it very much wanted this statute to reach as broadly as possible. You can see that in other aspects of the statute. So you have the strict liability as to the child's age. You have the fact that it doesn't require the Sex Act to actually occur, that it uses the future tense. It uses the word any three times in the definition of Commercial Sex Act in 2015, and I think this actually kind of just actually in some ways goes to the heart of the case. So in 2015, Congress added language to clarify that the statute includes purchasing sex. And so when you talk about kind of is this a common sex trafficking prosecution, Congress indicated that it didn't just want to reach instances where there were kind of people crossing state lines to traffic a number of individuals. It was very clear that it also wanted to reach the act of purchasing sex from a single individual. You also have the higher mandatory minimum where a child is under the age of 14. There is ultimately no mismatch between the definition of Commercial Sex Act and the common understanding. As I've already said, the title of sex trafficking isn't a basis to narrow the interpretation. And the last point that I'd like to make is that Bond was, in the case itself, the Supreme Court describes Bond as, quote, curious, unusual, and the result of, quote, exceptional convergence of factors. And you just don't see any basis here to reverse the conviction. Unless the Court has any further questions, I will rest on the briefs. All right.  Thank you. Mr. Bogan for rebuttal. On the standard of review question, I just want to point to the precise language that was in the motion to dismiss. Charging an alleged assault under a statute designed to combat slavery and involuntary servitude goes far beyond the plain meaning and purpose of the statute. Now, I don't know how you can interpret that and mean anything other than the argument that we're making here, which is that the statute doesn't, Congress did not clearly intend for the statute to reach this conduct. The only thing we didn't do below was say Bond and cite Bond for this proposition or Jones. But there, and in the Rule 29 motion at the end of the government's case, we renewed that argument so the arguments preserved were not on plain error. Now, again, I mentioned before that it doesn't appear that the government had cited any case where someone was prosecuted or a conviction was upheld in circumstances like this. And here, all of the cases that the government mentioned, they were all commercial prostitution operations. And so that's, again, that is not what we have here. The P-H-E-A case? Yes. Because they cite, they do cite it, and you haven't responded in the reply wreath to it. Do you remember, do you know the case? My office had it on a 2255 later on, in my recollection. So that was a pimp again, it was, that case involved? Involved commercial prostitution. Now, as to the limiting principle that the government offered, that the interstate commerce elements mean that not just any, not just any instance of sexual assault will fall within the statute. Under the government's interpretation here, though, it wouldn't take much if somebody, if Renteria had just invited the child into his house and given the child ice cream that Renteria had purchased at the grocery store, I don't see how that would be any different from the purchasing of a BMX bike or the hoverboard or taking the child to eat at restaurants. That would involve just as much of an involvement with interstate commerce as just a relatively de minimis instance of giving a child ice cream that had been purchased in commerce. And so there's really not much of a limiting principle. So true, not every instance of child sexual assault would necessarily fit the terms of the statute. For example, if somebody is, you know, visiting some friends, goes into the child's bedroom and molests them, probably not. But I submit that there's probably very, very many instances of state offenses that are similar to this, and as I said before, it's taken us 23 years to find out that this is something that the statute covers. I think that's strong evidence that even the government hasn't sought to prosecute people for this, as far as we know, and I haven't heard of any case where they've done so.